**UNITED STATES of America, Plaintiff,**

v.

**Alicia AGOSTO–HERNANDEZ, Roberto Barreto–Valentin, Defendants.**

**Nos. CRIM. 00–323(SEC), 00–324(SEC).**

United States District Court, D. Puerto Rico.

Nov. 30, 2000.

Jorge Vega–Pacheco, U.S. Attorney's Office District of P.R., Criminal Division, San Juan, PR, for Plaintiff.

Benjamin Ortiz–Belaval, Guillermo J. Ramos–Luina, San Juan, PR, for Defendants.

### OPINION AND ORDER

CASELLAS, District Judge.

Defendants are charged with unlawfully entering the U.S. Naval installation at Camp Garcia in Vieques, Puerto Rico, a violation of 18 U.S.C. § 1382 (1982). Before the Court are Defendants' motions

notifying their intention to present a necessity defense at trial.[1]

Prior to discussing the substantive issues raised in Defendants' motions, the Court will first comment on the scope of today's ruling. These two cases do not stand in isolation. Instead, they are two of numerous identical cases filed before this Court, and this District; all of which stem from alleged criminal trespasses by individuals on the Naval Installations in Vieques. Similarly, Defendants' intention to present the necessity defense is not novel. In fact, it has been raised and subsequently rejected by other courts in this Judicial District.[2] Therefore, the Court will fully discuss the issues raised by Defendants' motions with two objectives. First and foremost, to decide the issues as they apply to Agosto–Hernandez and Barreto–Valentin; and secondly, in anticipation of similar motions.

**Background**

On or about June 25, 2000, Defendants allegedly entered Camp Garcia Naval Installation at Vieques, Puerto Rico, that is, on lands reserved for the exclusive jurisdiction of the United States. This entry, was allegedly committed without the prior permission of the Commanding Officer at the United States Naval Station at Roosevelt Roads, or his representative. Therefore, Defendants are charged with a violation of 18 U.S.C. § 1382. They contend however, that the purpose of their alleged entry onto the military base is covered by the defense of necessity. As such, they filed motions notifying their intention to present the defense at trial.

**Applicable Law**

The defense of necessity is available to a defendant "when ... faced with a choice of two evils and must then decide whether to commit a crime or an alternative act that constitutes a greater evil." *United States v. Contento–Pachon,* 723 F.2d 691, 695 (9th Cir.1984); *United States v. Richardson,* 588 F.2d 1235, 1239 (9th Cir.1978); *United States v. Dorrell,* 758 F.2d 427, 430 (9th Cir.1985). In order to establish the necessity defense, as a matter of law, a defendant must establish the existence of four elements. Those elements are: (1) "that he was faced with a choice of evils and chose the lesser evil; (2) that he acted to prevent imminent harm; (3) that he reasonably anticipated a causal relation between his conduct and the harm to be avoided; and (4) that there were no other legal alternatives to violating the law." *United States v. Aguilar,* 883 F.2d 662, 693 (9th Cir.1989) *citing Dorrell,* 758 F.2d at 430–31. Furthermore, "the *Dorrell* test is stated in the conjunctive; thus, if defendants' offer of proof is deficient with regard to any of the four elements, the district judge must ... preclude evidence of necessity." *Aguilar,* 883 F.2d at 693.

**Analysis**

In their motions, Defendants allege that civilians have died in Vieques because of Navy bombings and that there is an immediate and continuing danger to life and health of the Vieques civilian population, evidenced by unprecedented cancer and other diseases. Similarly, they claim psychological damage to the children of Vieques and environmental damage to the island because of the continued bombing exercises. Finally, they argue that over the last fifty years, all reasonable legal alternatives to violating the law have been exhausted without alleviating the harms caused by the Navy. Based on these arguments, and a list of various medical, opinion, legal, technological, and geological evidence,[3] Defendants seek to justify their

---

1. Agosto–Hernandez's Motion: 00–323: Docket # 17.

   Barreto–Valentin's Motion: 00–324: Docket # 16.

2. See *United States v. Raul Maxwell–Anthony* Criminal. No. 00–596(JAF); *United States v. Hector Candelas et al.,* Criminal No. 00–374(PG).

3. See Agosto–Hernandez's Motion: 00–323:

alleged trespass by raising the necessity defense. However, for the reasons set forth below, the Court finds that they fail to carry their burden with respect to availability of the defense.

First, Defendants have not established that "the harm to be avoided must be so imminent that, absent the defendant's criminal acts, the harm is certain to occur." *Kabat,* 797 F.2d at 591, *citing United States v. Bailey,* 444 U.S. 394, 410, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). In fleshing out the imminency requirement, the Tenth Circuit has held that:

> [t]he defense of necessity does not arise from a "choice" of several courses of action, it is instead based on a real emergency. It can be asserted only by a defendant who was confronted with such a crisis as a personal danger, a crisis which did not permit a selection from several solutions, some of which did not involve criminal acts. It is obviously not a defense to charges arising from a typical protest.

*United States v. Seward,* 687 F.2d 1270, 1276 (10th Cir.1982). Furthermore, "none of the cases even suggest that the defense of necessity would be permitted where the actor's purpose is to effect a change in the governmental policies which, according to the actor, may in turn result in future savings of lives." *Kabat,* 797 F.2d at 591 *citing United States v. Kroncke,* 459 F.2d 697, 701 (8th·Cir.1972). In the case at bar, as in *Seward,* Defendants have failed to establish a crisis of personal danger. Instead, as in *Kabat,* Defendants' proclaimed goal is to save lives and protect the environment. Although both goals are eminently laudable, they do not approach the imminency threshold required to present the necessity defense.

Second, the Court finds Defendants' have failed to establish that there were no other legal alternatives to violating the law. Like the Court concluded in *Dorrell,* we find that protestors cannot create necessity by their own impatience, especially when a multitude of other legal alternatives exist. 758 F.2d at 431. For example, Defendants could pronounce their "message: in the ... electoral process; by speech on public streets, in parks, in auditoriums, in churches, in lecture halls; and by the release of information to the media, to name only a few." *United States v. Quilty,* 741 F.2d 1031, 1033 (7th Cir.1984). Further, the Court does not find persuasive Defendants' argument that other protest and political activities have proven unsuccessful. It is clear, that "[t]he necessity defense was never intended to excuse criminal activity by those who disagree with the decisions and policies of the lawmaking branches of government: in such cases the 'greater harm' sought to be prevented would be the course of action chosen by elected representatives, and a court in allowing the defense would be making a negative political or policy judgment about the course of action." *Kabat,* 797 F.2d at 591.

Third, as is routine in political protest cases, Defendants have failed to establish a sufficient causal relationship between the act committed by the defendants and avoidance of the asserted "greater harm." *Kabat,* 797 F.2d at 592. For example, in *Kroncke* the court determined that defendant's protest-destroying selective service records-and his goal-ending the Vietnam War-were too tenuous and uncertain to establish the requisite causal relationship. 459 F.2d at 701; *see also Dorrell,* 758 F.2d at 433(finding defendant's entry onto an air force base to spray paint government property lacking the causal nexus to support his goal of terminating the MX missile program.). For the same reasons, the Court finds Defendants' entry onto Camp Garcia to end Naval bombardments lacking the sufficient causal relationship.

Docket # 17 ¶ 5.
  Barreto–Valentin's Motion: 00–324: Dock-

et # 16 ¶ 5.

Finally, the Court finds Defendants' Offers of Proof irrelevant to the ultimate issue of whether they knew they were entering Camp Garcia without authorization on June 25, 2000. *See* Fed.R.Evid. 401–402.

## Conclusion

Defendants, having failed to meet their burden, may not present the necessity defense at trial. Their motions are hereby **DENIED.**

**SO ORDERED.**