NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3145
_____

UNITED STATES OF AMERICA

v.

MARTIN CASTRO-MOLINA,
a/k/a Jose Noe Galsano-Castellano,
                                    Appellant


_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-18-cr-00408-001)
District Judge: Honorable Edward G. Smith
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 9, 2020

Before: CHAGARES, HARDIMAN, and MATEY, *Circuit Judges*.

(Filed: September 10, 2020)


_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Martin Castro-Molina appeals his judgment of conviction on the ground that the District Court erred in denying his request for a jury instruction on a justification defense. Because he failed to establish the defense at trial, we will affirm.

I

A native of Mexico, Castro-Molina has entered the United States unlawfully and been removed several times. Most recently, he entered through Texas and made his way to Bethlehem, Pennsylvania. Local police arrested Castro-Molina in 2018 following a traffic stop and alerted immigration authorities, who reinstated a previous removal order. The Government then indicted Castro-Molina for illegal reentry following removal in violation of 8 U.S.C. § 1326(a).

Prior to trial, the Government filed a motion in limine to prevent Castro-Molina from presenting evidence supporting a justification defense. The District Court reserved judgment on the motion until jury selection. After jury selection, the Court denied the motion in limine and deferred until the charge conference whether to give a justification instruction.

In its case in chief, the Government called Deportation Officer Gregory Marino, who testified that he interviewed Castro-Molina following his 2018 arrest in Bethlehem. During the interview, Castro-Molina admitted he did not fear returning to Mexico. In fact, he said he wanted to return as soon as possible.

At trial, Castro-Molina testified as follows. Before his 2018 arrest, he had been removed from the United States three times. In January 2017, after his most recent

2

removal, he went to Reynosa, Mexico (a border city) to make enough money to travel home to Monterrey, Mexico. He lived and worked in Reynosa with a man named Angel from January until May. One night in May, a gang of armed men broke into Angel's house, put a hood over Castro-Molina's head, and questioned him about a large cache of weapons. After the men left, Angel assured Castro-Molina that he would "take care of everything." App. 610. Two days later the gang returned. They kidnapped Angel's nephew and his nephew's friend. Before leaving, they said they would come back to kill Angel and "the other one." *Id.* Understanding that he was "the other one," Castro-Molina feared for his life, so he decided to leave Reynosa.

Soon thereafter Castro-Molina bought a ticket and boarded a bus to Monterrey. Twenty-five minutes into the trip, Mexican military police stopped the bus and asked the passengers for identification. Castro-Molina did not have any identification, so police removed him from the bus. He told police what happened with the armed men in Reynosa, but they beat him and forced him to return to Reynosa. Although he knew his prior deportation orders prohibited him from reentering the United States for 20 years, Castro-Molina crossed the Rio Grande into Texas. He lived and traveled in the United States for the next 14 months without presenting himself to immigration authorities or seeking asylum.

As the trial came to a close, defense counsel argued the evidence entitled Castro-Molina to a jury instruction on his justification defense. The District Court disagreed, finding that Castro-Molina failed to establish the justification defense's third prong. The Court opined: "there is simply no evidence to support the fact that he had no reasonable

3

legal alternative to violating the law and I find that no reasonable juror could find that he has established that there was no reasonable alternative to violating the law." App. 632.

The jury found Castro-Molina guilty and the District Court sentenced him to ten months' imprisonment. Castro-Molina timely appealed.

II[1]

Castro-Molina argues the District Court erred by denying his jury instruction. We agree with the District Court that Castro-Molina failed to present evidence sufficient for a rational juror to conclude that his illegal reentry was justified.

We assume for purposes of this appeal that a justification defense is available for defendants charged with violating 8 U.S.C. § 1326(a). *Cf. United States v. Paolello*, 951 F.2d 537, 541 (3d Cir. 1991) (recognizing a justification defense applies to violations of 18 U.S.C. § 922(g)(1) even though the statute does not explicitly provide it). To establish a justification defense, a defendant must show:

> (1) he was under unlawful and present threat of death or serious bodily injury; (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) he had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and (4) there is a direct causal relationship between the criminal action and the avoidance of the threatened harm.

*Id.* at 540 (citations omitted). In determining whether an instruction is proper, courts must view evidence supporting a justification defense in the light most favorable to the

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We review the denial of the jury instruction "to determine whether there was evidence presented to support the theory of justification and . . . make a plenary legal determination of whether justification could have been a defense to the indictment." *United States v. Paolello*, 951 F.2d 537, 539 (3d Cir. 1991).

4

defendant. *Id.* at 542. But a defendant is not entitled to the instruction if no rational juror could "use[] it as the basis for an acquittal." *United States v. Mike*, 655 F.3d 167, 175 (3d Cir. 2011) (citing *Gov't of V.I. v. Carmona*, 422 F.2d 95, 101 (3d Cir. 1970)).

Our review of the record leads us to conclude that Castro-Molina failed to introduce sufficient evidence to establish two of the four requisites for a justification defense. He failed to show that he faced a "present threat of death or serious bodily injury" (prong 1) and that "he had no reasonable legal alternative" (prong 3) when he illegally reentered the United States.

Accepting Castro-Molina's testimony as true, the evidence supported only a "generalized threat of future danger" insufficient to meet prong 1 of the justification defense. *United States v. Alston*, 526 F.3d 91, 96 (3d Cir. 2008). He introduced no evidence that, at the time he crossed the border, he faced a present or imminent threat of death or serious bodily injury from the gang. *See id.* (no present or imminent threat when Alston overheard man say he would "get" him, because Alston could get away safely). The armed men left Angel's home, giving Castro-Molina a chance to escape. He did just that by boarding a bus to return home to Monterrey. Although that escape failed, he could have avoided Angel's home and Reynosa altogether by seeking safe haven elsewhere in Mexico. In short, no part of his testimony showed by a preponderance of the evidence that he faced a present threat of death or serious bodily injury when he illegally reentered the United States.

As the District Court found, Castro-Molina also failed at prong 3 to introduce sufficient evidence to establish that he had no reasonable legal alternative to illegally

5

reentering the United States. He claims he had to do so because "Mexican police foiled his attempt to flee southward and his lack of identification prevented him from traveling elsewhere in Mexico." Castro-Molina Br. 14. But Castro-Molina fails to explain why this single failed attempt to leave Reynosa and his lack of identification left him with no reasonable alternative to illegal reentry.

Castro-Molina relies on two cases in which a justification defense instruction was deemed proper—*United States v. Paolello* and *United States v. Contento-Pachon*, 723 F.2d 691 (9th Cir. 1984). Unlike *Paolello*, where the defendant had no other choice but to wrestle a gun from a man attacking his stepson, Castro-Molina had a host of reasonable legal alternatives to illegal reentry. *See* 951 F.2d at 542.

*Contento-Pachon* is even less helpful to Castro-Molina. Contento-Pachon was working as a taxicab driver in Bogota, Colombia, when one of his passengers asked him to smuggle drugs into the United States. *Contento-Pachon*, 723 F.2d at 693. Contento-Pachon initially refused, but he relented after the drug trafficker learned details about his personal life and threatened to kill him, his wife, and his three-year-old child. *Id.* He was arrested in the United States and charged with unlawful possession with intent to distribute narcotics. *Id.* at 692. Based on those facts, the Ninth Circuit held he established a prima facie duress defense.[2] *Id.* at 695. Castro-Molina's situation in Reynosa is readily distinguishable from that of Contento-Pachon. The armed men who threatened to kill Castro-Molina did not coerce him into illegally reentering the United States. Moreover,

---

[2] Duress, necessity, and justification defenses "have generally all been analyzed in terms of justification." *Alston*, 526 F.3d at 94 n.3.

Castro-Molina's home in Mexico was in Monterrey, so he had options other than illegal reentry to avoid the troubles in Reynosa.[3]

## III

For the reasons stated, we will affirm Castro-Molina's judgment of conviction.

---

[3] Castro-Molina also appeals an order denying his motion to dismiss the indictment before trial based on an alleged lack of jurisdiction. But as he now concedes, our recent decisions in *United States v. Dohou*, 948 F.3d 621 (3d Cir. 2020), and *Nkomo v. Att'y Gen.*, 930 F.3d 129 (3d Cir. 2019), foreclose that argument.