# United States Court of Appeals
## For the First Circuit

No. 14-1616

UNITED STATES OF AMERICA,

Appellee,

v.

SAMUEL STALIN LEBREAULT-FELIZ,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]


Before

Howard, Chief Judge,
Torruella and Barron, Circuit Judges.


Larry J. Ritchie was on brief for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief for appellee.


November 25, 2015

**BARRON**, **Circuit Judge**.  Samuel Stalin Lebreault Feliz ("Lebreault") appeals his convictions on two counts of passport fraud, one count of false representation to the Social Security Administration, and one count of theft of public money.  He contends that the District Court erred in barring him from presenting the defenses of duress and necessity as to the first count of passport fraud, and that this error also prejudiced his ability to defend against the other counts against him.  In addition, Lebreault contends that the District Court erred in denying his motion for acquittal as to the second count of passport fraud.  We affirm the convictions.

## I.

On October 15, 2014, Lebreault was convicted of two counts of passport fraud pursuant to 18 U.S.C. § 1542, one count of false representation to the Social Security Administration pursuant to 42 U.S.C. § 408(a)(6), and one count of theft of public money pursuant to 18 U.S.C. § 641.  On May 29, 2014, Lebreault was sentenced to serve thirty-three months in prison with three years of supervised release.  He was also ordered to pay restitution for theft of public funds.

The passport fraud convictions arise from Lebreault's efforts to secure a passport first for himself and then, years later, for his daughter.  These convictions relate to his use of false identities in his applications for each passport.  The other

convictions arise from Lebreault's use of a false identity in connection with his efforts to work in the United States and to secure government benefits for himself and his children.

With respect to the first count of passport fraud, on November 18, 2003, Lebreault submitted a passport application to officials at the United States embassy in Caracas, Venezuela using a false identity, "Juan Antonio Castro Pizarro" ("Castro identity"). On the basis of this application, Lebreault was issued a temporary, limited passport to return to the United States. Upon arrival in Miami, Lebreault admitted to United States immigration officials in a sworn statement that he had used a false identity to obtain the passport and that he was actually "Antonio Jose Rodríguez Rodríguez" ("Rodríguez identity") from Venezuela (which, it turned out, was also a false identity).

With respect to the second count of passport fraud, on June 14, 2007, Lebreault applied from the United States for a passport for his then-seven-year-old daughter Adriana Lebreault, a United States citizen. Federal regulations require parents of a minor to execute the passport application on the minor's behalf and to provide certain evidence of parentage, which includes identifying information. See 22 C.F.R. § 51.28(a)(2). Lebreault used the false Rodríguez identity when executing Adriana's passport application.

With respect to the other convictions, on June 1, 2011, Lebreault submitted an application for a replacement social security card using the false Rodríguez identity.[1]  In addition, Lebreault used the false Rodríguez identity in signing a number of forms under penalty of perjury between 2006 and 2012 to establish and maintain eligibility for the Department of Housing and Urban Development Section 8 program, which provides housing and utility subsidies.  Lebreault received $121,077 worth of benefits under this program between 2007 and 2013 for himself and his children.

At trial, Lebreault sought to raise duress and necessity defenses on the first count of passport fraud.  His proffer in support of those defenses describes a purported incident that he contends occurred in the Dominican Republic well before he first applied for a passport in Venezuela so that he could travel from Venezuela to the United States.  The District Court, assuming the truth of the proffer, found that the proffered facts did not suffice to support the requested defenses given the absence of imminent harm and the availability of reasonable alternatives to violating the law.  For those reasons, the District Court barred Lebreault from presenting the duress and necessity defenses and denied the jury instruction that Lebreault requested regarding

---

[1]  On September 17, 2010, Lebreault obtained special immigration status as an abused spouse of a United States citizen. That status provided him with a basis to work legally in the United States and to receive public benefits.

those defenses.  Lebreault then asked for reconsideration on the basis of a supplemented proffer, but the District Court affirmed its prior ruling for substantially the same reasons it had given the first time.

Lebreault moved for acquittal on the second count of passport fraud.  He argued that he could not be found guilty of making false statements "contrary to the laws [and rules] regulating the issuance of passports" -- as the relevant statute requires, see 18 U.S.C. § 1542 -- because he was applying for a passport for a United States citizen, his minor daughter, who was entitled to a passport.  The District Court denied Lebreault's motion for judgment of acquittal on this count.

## II.

Duress is an affirmative defense that requires proof that "the defendant committed a crime as a result of (1) an immediate threat of serious bodily injury or death (2) that the defendant reasonably believed was true, (3) without a reasonable opportunity to escape or frustrate the threat." United States v. Diaz-Castro, 752 F.3d 101, 108 (1st Cir. 2014).  The closely related affirmative defense of necessity requires proof that the defendant "(1) was faced with a choice of evils and chose the lesser evil, (2) acted to prevent imminent harm, (3) reasonably anticipated a direct causal relationship between his acts and the harm to be averted, and (4) had no legal alternative but to violate

- 4 -

the law." <u>United States</u> v. <u>Maxwell</u>, 254 F.3d 21, 27 (1st Cir. 2001).

Lebreault argues that he was wrongly barred from presenting evidence of duress and necessity to the jury in defending against the first count of passport fraud. "But precisely because a defendant is entitled to have [his evidence be] . . . judged by the jury, it is essential that the testimony given or proffered meet a minimum standard as to each element of the defense so that, if a jury finds it to be true, it would support an affirmative defense . . . ." <u>United States</u> v. <u>Bailey</u>, 444 U.S. 394, 415 (1980). As a result, "when the proffer in support of an anticipated affirmative defense is insufficient as a matter of law to create a triable issue, a district court may preclude the presentation of that defense entirely." <u>Maxwell</u>, 254 F.3d at 26. And when a district court does so, we review the decision de novo. <u>See</u> <u>id.</u>

Lebreault proffered the following facts in support of his right to present these defenses. He asserted that on May 8, 2003, he and a friend, Cesar, were involved in an altercation in the Dominican Republic with robbers that culminated in Cesar's death. On the advice of a state senator, the proffer continued, Lebreault spoke with a district attorney in the country, who confirmed Cesar's death and told Lebreault that Cesar's family believed he was responsible for the murder. Lebreault further

proffered that Cesar's uncle was a general in the Dominican Republic police.

Lebreault contended in his proffer that he then went into hiding in another town in the Dominican Republic for three months and was told by the district attorney with whom he had previously spoken about the incident that it was not safe for him to return to his hometown in that country. Lebreault further proffered that he subsequently fled to Venezuela and that, while he was in that country, his father was charged with Cesar's murder and tortured while in custody and that his brother died under suspicious circumstances. Lebreault also proffered that all the people involved in the incident that led to Cesar's death were arrested and died in jail.

On the basis of these events, Lebreault contends that he eventually decided to use the false Castro identity to obtain a passport so that he could travel from Venezuela to the United States. And thus he argues that duress and necessity are available as affirmative defenses.

Even accepting these proffered facts, however, we do not see how they show that the District Court erred in barring Lebreault from presenting duress and necessity defenses. By Lebreault's own account, there was a six-month lapse in time between the incident in the Dominican Republic and his application for a United States passport, which occurred while Lebreault was

in an entirely different country and after he had been in that country for a full three months. Lebreault has thus failed to come close to demonstrating that the District Court erred in finding that he made an insufficient showing of imminent harm or lack of reasonable alternatives to violating the law. See, e.g., United States v. Bello, 194 F.3d 18, 26-27 (1st Cir. 1999) (finding no imminence where there was a cooling-off period of eighteen hours after threat of harm); United States v. Arthurs, 73 F.3d 444, 448-49 (1st Cir. 1996) (finding that defendant could have discarded drugs or sought help in the minutes between being threatened in a cruise ship bathroom and then exiting that ship with contraband).

Even the out-of-circuit precedent on which Lebreault principally relies, United States v. Contento-Pachon, 723 F.2d 691 (9th Cir. 1984), is of no help to him. That case involves readily distinguishable facts regarding the requirement of imminence, see id. at 693-94 (finding that threat of harm was still imminent where lapse of time between initial threat and crime was a matter of days and where defendant was told he would be under constant surveillance), and that case explains that the lack-of-reasonable-alternatives requirement generally cannot be satisfied once the "defendant has reached a position where he can safely turn himself in to [or call on] the authorities", see id. at 695.

Accordingly, Lebreault's attempt to challenge this conviction on the ground that he was wrongly barred from presenting

- 7 -

duress and necessity defenses is without merit, and thus so, too, is his contention that the jury should have been instructed on those defenses. Lebreault has also waived any argument that his inability to present the requested defenses prejudiced his ability to defend against the other counts against him. He conceded below that he could not "in good faith" present the defenses with respect to those other counts. And he does not contend that he sought to introduce evidence pertaining to the facts in the proffer for any other purpose. Having waived this issue below, Lebreault may not resurrect it on appeal. See United States v. Gaffney-Kessell, 772 F.3d 97, 100 (1st Cir. 2014).

## III.

Lebreault next argues that the District Court erred in denying his motion for judgment of acquittal on the second count of passport fraud. We review the denial of a motion for judgment of acquittal de novo, construing the evidence in a "prosecution-friendly light." United States v. George, 761 F.3d 42, 48 (1st Cir. 2014). And after performing that review, we reject Lebreault's challenge to his conviction under the first clause of 18 U.S.C. § 1542.[2]

---

[2] The statute provides in relevant part:
"Whoever willfully and knowingly makes any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules

- 8 -

Lebreault contends that he cannot be convicted under the first clause of § 1542 because his daughter is a United States citizen and is therefore entitled to a passport. And Lebreault contends that this fact makes the issuance of a passport to her not "contrary to the laws [and rules] regulating the issuance of passports." 18 U.S.C. § 1542. Lebreault is less than clear, however, as to why his daughter's citizenship bars his conviction, and we conclude that it does not.

Lebreault may mean to argue that he can only be found guilty under the first clause of § 1542 if his false statements were "contrary to the laws [and rules] regulating the issuance of passports," id., and would have materially influenced the decision of the agency charged with processing passport applications. We have previously stated, however, that the first clause of § 1542 does not contain such a materiality requirement, see United States v. Salinas, 373 F.3d 161, 167 (1st Cir. 2004), and other Circuits have so held, see, e.g., United States v. Hart, 291 F.3d 1084, 1085 (9th Cir. 2002) (per curiam) ("We . . . now explicitly hold that proof of materiality is not required for this [§ 1542] offense."); United States v. Hasan, 586 F.3d 161, 167 (2d Cir. 2009) (joining other circuit courts in holding that the aspect of § 1542 at issue does not contain a materiality requirement).

prescribed pursuant to such laws . . . Shall be fined under this title, imprisoned . . . or both." 18 U.S.C. § 1542.

- 9 -

Moreover, even assuming the relevant provision contains a materiality requirement, Lebreault's challenge still fails. We do not see how the federal regulation requiring Lebreault to "provide documentary evidence of parentage" when applying for a passport on behalf of a minor, including "the names of the parent or parents," was not violated when Lebreault provided a false parental name. 22 C.F.R. § 51.28(a)(2). And a jury could reasonably find on this record that the false statements made "contrary to" the regulation materially influenced the decision of the agency charged with processing passport applications. In fact, the government offered testimony that the State Department would not have issued a passport to Adriana had it known that her passport application contained false information as to the identity of her father. Thus, we reject Lebreault's assertion -- to the extent he means to make it -- that because Adriana was legally entitled to a passport (by virtue of her status as a United States citizen), he cannot be convicted under the first clause of § 1542 because the false information he supplied was not material.

At oral argument, Lebreault's counsel separately indicated that there might be a distinct question as to whether Lebreault possessed the requisite intent to commit the second count of passport fraud. But we decline to decide here whether the first clause of 18 U.S.C. § 1542 sets forth a specific intent requirement, such that there may be liability only if the defendant

- 10 -

specifically "intends to induce or secure the issuance of a passport contrary to the laws [and rules] regulating the issuance of passports" (emphasis added). See United States v. Aifang Ye, 792 F.3d 1164, 1168 (9th Cir. 2015) (joining other circuit courts in holding that the first clause of § 1542 does not embody a specific intent requirement). As the government correctly points out, Lebreault did not develop this argument in his briefs, and it is therefore waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

## IV.

For the reasons above, the judgment of the District Court is affirmed.